2004 WY 25

**LARIAT DIESEL CORPORATION, a Wyoming corporation, d/b/a Lariat International Trucks, Appellant (Plaintiff),**

v.

**WYOMING DEPARTMENT OF TRANSPORTATION; and Jack's Heavy Equipment, Inc., a Wyoming corporation, Appellees (Defendants).**

No. 02–272.

Supreme Court of Wyoming.

March 17, 2004.

Representing Appellant: Thomas M. Hogan and Donald L. Painter, Casper, Wyoming. Argument by Mr. Hogan.

Representing Appellees: Patrick J. Crank, Wyoming Attorney General; and Mary Loos, Assistant Attorney General. Argument by Ms. Loos for Wyoming Department of Transportation. James L. Edwards of Stevens, Edwards & Hallock, P.C., Gillette, Wyoming, for Jack's Heavy Equipment, Inc.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

HILL, Chief Justice.

[¶1] Appellant, Lariat Diesel Corporation (Lariat), disputes the authority of the Appellee, Wyoming Department of Transportation (WYDOT), to purchase motor vehicles from Appellee, Jack's Heavy Equipment, Inc, (Jack's). Lariat contends that the district court erred in failing to enjoin the award of the bid to Jack's, and in denying Lariat's demand that the vehicles be purchased from it. Lariat asserts that Jack's was not a licensed motor vehicle dealer in Wyoming nor did Jack's have a dealer franchise which authorized it to sell the vehicles that were the subject of WYDOT's bid solicitation. Because of these circumstances, it is Lariat's further contention that Jack's did not qualify to compete in the bidding process and that WYDOT could not accept Jack's bid, even though Jack's eventually did become a licensed dealer in Wyoming, before the bid was awarded to it. In addition, Lariat contends that the district court erred in setting aside the default entered in favor of Lariat and against the State. Lariat also seeks to recover the costs it incurred in seeking to bid in these circumstances, lost profits associated with the bid, and attorney's fees incurred in prosecuting this matter as a "private attorney general."

[¶2] We affirm.

## ISSUES

[¶3] Lariat raises these issues:

A. Did the district court err in denying Lariat's request to enjoin the State from executing and/or performing the contract with Jack's and in denying Lariat's request to award the contract to Lariat in its October 11, 2001 "Order Granting in Part and Denying in Part Summary Judgment"?

B. Did the district court err in granting Summary Judgment against Lariat on its claims for declaratory relief and for intentional interference with business expectancy in the court's February 25, 2002 "Second Order Granting in Part and Denying in Part Summary Judgment"?

C. Did the district court err in granting Summary Judgment against Lariat on its claims for damages under the theories of promissory estoppel and breach of a duty to treat Lariat's bid honestly and fairly in the court's November 13, 2002 "Order Granting Summary Judgment in Favor of Defendant"?

D. Did the district court err in setting aside the clerk of court's Entry of Default against the State of Wyoming in its February 6, 2001 "Order Setting Aside Entry of Default"?

WYDOT reorders and restates the issues proposed by Lariat:

1. Whether the District Court erred when it set aside the Clerk's Entry of Default against [WYDOT].

2. Whether the District Court erred when it denied Lariat's prayer to enjoin [WYDOT] from performing the contract with Jack's and when it denied Lariat's prayer to award the contract to Lariat.

3. Whether the District Court erred when it denied Lariat's claims for declaratory relief and intentional interference with business expectancy.

4. Whether the District Court erred when it denied Lariat's claims for damages under the theories of promissory estoppel and breach of a duty to treat Lariat's bid honestly and fairly.

In addition, on August 19, 2003, two days before oral argument, the State submitted a letter to the Court (with copies to other counsel) giving notice of additional authority supporting its arguments. During oral argument, it was made clear by WYDOT's attorney that the additional authority did not support an argument already put forward by WYDOT, but rather, it supported an argument that this Court lacked jurisdiction to consider the appeal and, hence, the appeal should be dismissed. This theory was premised on the failure of Lariat to exhaust the remedy available to it under W.R.A.P. 12 (i.e., Lariat had failed to timely file a petition for review of WYDOT's administrative action). The issue raised by WYDOT during oral argument was not addressed to the district court. WYDOT did not file a motion to dismiss the appeal nor was this issue supported by a brief or other written argument addressed to this Court.

Jack's statement of the issues is more limited:

I. Did the District Court properly grant summary judgment in favor of [WYDOT and Jack's]?

II. Should Jack's Heavy Equipment, Inc. be awarded its attorney fees and costs as a result of the violation of Rule 11 [W.R.C.P.] by [Lariat] in pursuing this frivolous litigation?

### FACTS AND PROCEEDINGS

[¶ 4] The essential facts are not disputed. WYDOT solicited bids to supply dump truck chassis and a tractor. Lariat and Jack's submitted bids. The bids were due on January 6, 2000. Jack's was the lowest bid, and Lariat's was the second lowest bid. Lariat contends that Jack's was not a qualified or responsive bidder because Jack's was not licensed to sell vehicles in Wyoming, as well as because it was not yet a franchised dealer for the products it proposed to sell. WYDOT knew of these factors at the time the bids were opened. Jack's got its dealer's license on January 10, 2000. The issuance of that license is at the heart of this dispute. The State concedes that Jack's did not submit its application for a license until January 12, 2000. Nonetheless, the license in question was issued with an effective date of January 10, 2000. At oral argument, counsel for WYDOT explained that the license is issued as effective on the date WYDOT receives the dealer's bond, rather than the date of the application itself.[1] Lariat indicated at oral argument that it had not heard such an explanation before. The record does show that Jack's franchise agreement was effective on January 1, 2000. Jack's bid was accepted by WYDOT on January 20, 2000. Jack's completed delivery on the contract on July 28, 2000.

[¶ 5] Immediately following the award of the bid to Jack's, Lariat sent several letters to WYDOT protesting the award. By letter dated February 3, 2000, WYDOT informed Lariat that WYDOT's decision to award the contract to Jack's was final. By letter dated March 15, 2000, Lariat submitted a claim under the Wyoming Governmental Claims Act, Wyo. Stat. Ann. §§ 1–39–101 through 1–39–121 (LexisNexis 2003). Lariat demanded the sum of $64,318.81 as lost profits and the expense of preparing its bid. The claim was denied by letter dated April 21, 2000.

[¶ 6] After Jack's had already completed delivery on the contract, Lariat filed its complaint in the district court on August 11, 2000, alleging that WYDOT could not accept the "nonresponsive" bid made by Jack's. Wyo. Stat. Ann. §§ 31–16–102 and 31–16–103 (LexisNexis 2003) provide that no person may solicit sales of vehicles without a vehicle dealer's license, and that if such sales are to be solicited, then the license must be obtained before soliciting sales. An attorney representing WYDOT entered an appearance on August 25, 2000, and also filed a motion to dismiss on that same date. Jack's filed a similar motion to dismiss on August 28, 2000. By order entered on January 4, 2001, both motions were denied.

[¶ 7] On January 17, 2001, Jack's answered Lariat's complaint. WYDOT's answer was filed on January 26, 2001. On January 26, 2001, Lariat filed a motion for entry of default, asserting that WYDOT's time to answer had expired. See W.R.C.P. 12(a)(1). The clerk's entry of default occurred on January 26, 2001. On January 31, 2001, WYDOT filed a motion to set aside entry of default. The district court set aside the entry of default by order entered on February 6, 2001.

[¶ 8] Lariat, Jack's, and WYDOT filed motions for summary judgment in early July of 2001. By order entered on October 11, 2001, the district court determined that neither an order enjoining WYDOT from awarding the bid to Jack's, nor an order directing WYDOT to award the bid to Lariat, were feasible remedies because the contract had already been awarded to Jack's, and Jack's had made delivery of the vehicles. Thus, two of the remedies sought by Lariat were moot. However, the district court also held that Lariat would be permitted to file an amended complaint to assert a claim for damages.

---

1. The record also reflects that WYDOT changed its policy after this occurrence to require a vehicle dealer to have a license when a bid is submitted.

[¶ 9] Such a complaint was filed on October 2, 2001.[2] Lariat filed a second motion for summary judgment, which WYDOT opposed, as did Jack's. The district court's order on these motions for summary judgment was entered on February 25, 2002. In that order, the district court granted WYDOT's motion for summary judgment with respect to declaratory relief, largely because such relief would have been moot in these circumstances. Concerning Lariat's claim called "breach of a duty to treat Lariat's bid honestly and fairly," the district court found that there were genuine issues of material fact that precluded summary judgment. With respect to Lariat's claim of promissory estoppel, the district court allowed Lariat additional time to file another amended complaint. The district court granted Jack's motion for summary judgment on Lariat's claim of intentional interference with a business expectancy and awarded Jack's its costs. The district court denied Jack's motion for sanctions pursuant to W.R.C.P. 11.

[¶ 10] On March 7, 2002, Lariat filed its second amended complaint iterating its claim that WYDOT breached a duty to treat its bid honestly and fairly, and fleshing out its promissory estoppel claim. Lariat asserted damages of $64,300.00 for loss of profit and the cost of submitting its bid. Summary judgment motions were again filed by Lariat and WYDOT.[3] By order entered on November 13, 2002, the district court entered summary judgment in favor of WYDOT, bringing this litigation to a conclusion. The district court determined that Lariat's claim was a tort action and was precluded by the Governmental Claims Act. It further recognized that WYDOT was not governed by Wyoming's general competitive bidding statute. Wyo. Stat. Ann. § 9-2-1016(b) (LexisNexis 2003) (excepting entirely the University of Wyoming, community college districts, and school districts; and the department of transportation except as to paragraphs (xi), (xii) and (xiii) of that subsection). The district court

also relied upon our decision in *State v. Weisz & Sons, Inc.*, 713 P.2d 176 (Wyo.1986), wherein we concluded that where the bidding procedures followed by an executive branch agency are not "other than lawful, reasonable, and in the exercise of honest judgment, good faith, and accepted competitive bid practices, ... the judiciary of this state cannot interfere and substitute its judgment for that of the responsible agency[.]" *Id.* at 185. Furthermore, the district court concluded that promissory estoppel did not apply in the circumstances of this case because WYDOT made no promise by soliciting bids and because WYDOT reserved the right to reject any and all bids.

## DISCUSSION

■ [¶ 11] We can find no basis on which to disagree with the district court's orders in this matter. We will enlarge only briefly on the district court's conclusions. The competitive bidding process is designed primarily to protect the public's interest in ensuring that the government will not pay too high a price for goods and services, and irregularities in that process will seldom provide a basis for a claim for damages. *See generally,* James L. Isham, Annotation, *Public Contracts: Low Bidder's Monetary Relief Against State or Local Agency for Nonaward of Contract,* 65 A.L.R.4th 93, esp. § 2 at 99–102 (1988 and Supp.2002); Noralyn O. Harlow, Annotation, *Public Contracts: Authority of State or Its Subdivision to Reject All Bids,* 52 A.L.R.4th 186, esp. § 2 at 192–95 (1987 and Supp.2002); and Robert M. Ey, Annotation, *Authority of State, Municipality, or Other Governmental Entity to Accept Late Bids for Public Works Contracts,* 49 A.L.R.5th 747, esp. § 2 at 754–55 (1997 and Supp.2002). Wyo. Stat. Ann. §§ 31–16–102, 31–16–103, and 31–16–112 address an entirely separate and distinct interest, and a violation of those statutes is punishable as a misdemeanor.

---

**2.** The district court issued a decision letter on *September 6, 2001, permitting the filing of an amended complaint, but counsel for WYDOT neglected to submit an order memorializing that decision letter, as directed in the decision letter, until after the amended complaint was filed.*

**3.** At this point, there were no remaining issues pertaining to Jack's.

[¶ 12] With respect to the district court's decision to grant WYDOT relief from the entry of default, we note that decisions resolving motions for setting aside the entry of default or a default judgment are made in the sound discretion of the trial court. *Fluor Daniel (NPOSR), Inc. v. Seward,* 956 P.2d 1131, 1134 (Wyo.1998). We perceive no abuse of discretion here.

[¶ 13] WYDOT contends that this Court lacks jurisdiction to consider this appeal and that it must be dismissed. WYDOT is correct that a question of subject matter jurisdiction may be raised at any time, even on the Court's own motion. *See Exotex Corporation v. Rinehart,* 3 P.3d 826, 828 n. 2 (Wyo.2000); and *Mutual of Omaha Insurance Company v. Blury–Losolla,* 952 P.2d 1117, 1119–20 (Wyo.1998). Under the peculiar circumstance of this case, we decline to address WYDOT's jurisdictional issue as that matter is not entirely clear from the record, and the briefing and argument on this question are inadequate.

[¶ 14] We have carefully considered Jack's demand that fees and costs be awarded to it, and we decline to do so.

### CONCLUSION

[¶ 15] The orders of the district court are affirmed. Each party is to bear its own costs in this appeal.